LATHAM & WATKINS LLP
 William R. Baker, *pro hac vice*
  *william.baker@lw.com*
 Sean M. Berkowitz, *pro hac vice*
  *sean.berkowitz@lw.com*
 Patrick E. Gibbs, Bar No. 183174
  *patrick.gibbs@lw.com*
 Matthew Rawlinson, Bar No. 231890
  *matt.rawlinson@lw.com*
 Michele D. Johnson, Bar No. 198298
  *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Telephone: +1.714.540.1235
Facsimile: +1.714.755.8290

PAUL HASTINGS LLP
 Thomas P. O'Brien, Bar No. 166369
  *thomasobrien@paulhastings.com*
 Thomas A. Zaccaro, Bar No. 183241
  *thomaszaccaro@paulhastings.com*
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: +1.213.683.6000
Facsimile: +1.213.627.0705

Attorneys for Defendant
Manouch Moshayedi

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>     v.<br><br>MANOUCHEHR MOSHAYEDI,<br><br>             Defendant. | CASE NO. 12-CV-01179-JVS-ANx<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE LAY OPINION TESTIMONY CONCERNING MATERIALITY OF ALLEGED OMISSIONS (MIL NO. 1 OF 4)**<br><br>The Honorable James V. Selna<br><br>Date:    October 21, 2013<br>Time:    11:00 a.m.<br>Place:   Courtroom 10C |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   DISCUSSION ............................................................................................. 4

      A.   The Lay Opinion Testimony Should Be Excluded Because It Is
           Irrelevant To The Jury's Determination Of Materiality ..................... 4

      B.   The Lay Opinion Testimony Of The Analysts And
           Underwriters Should Be Excluded Under Rule 701 ........................... 7

           1.   The Proffered Lay Opinion Testimony Fails to Satisfy
                the Personal Knowledge Requirement Of Rule 701(a) ............. 7

           2.   The Proffered Lay Opinion Testimony Fails to Satisfy
                the Helpfulness Requirement Of Rule 701(b) ....................... 11

           3.   The Proffered Lay Opinion Testimony Is Inadmissible
                Because It Is Based on the Witnesses' Expertise and
                Specialized Knowledge In Violation Of Rule 701(c) ............. 13

      C.   The Proffered Testimony Should Be Excluded Under Rule 403 ...... 18

III.  CONCLUSION ......................................................................................... 20

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Athridge v. Aetna Cas. & Sur. Co.*,

5

474 F. Supp.2d 102 (D.D.C. 2007) ........................................................................ 9

6

*Basic v. Levinson*,

7

485 U.S. 224 (1988) ........................................................................ 11

8

*Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*,

9

929 F.2d 1229 (9th Cir. 1991) ........................................................................ 9

10

*Daubert v. Merrell Dow Pharm., Inc.*,

509 U.S. 579 (1993) ........................................................................ 18

11

*Einsberg v. Gagnon*,

12

766 F.2d 770 (3d Cir. 1985) ........................................................................ 10

13

*Grossman v. Novell, Inc.*,

14

120 F.3d 1112 (10th Cir. 1997) ........................................................................ 11

15

*Hester v. BIC Corp.*,

16

225 F.3d 178 (2d Cir. 2000) ........................................................................ 10, 13, 14

17

*Jackson v. Virginia*, 443 U.S. 307 (1979) ........................................................................ 14

18

*Kumho Tire Co., Ltd. v. Carmichael*,

19

526 U.S. 137 (1999) ........................................................................ 18

20

*Lauria v. Nat'l R.R. Passenger Corp.*,

21

145 F.3d 593 (3d Cir. 1998) ........................................................................ 12

22

*Lohnes v. Level 3 Communs., Inc.*,

23

272 F.3d 49 (1st Cir. 2001) ........................................................................ 17

24

*Lynch v. City of Boston*,

180 F.3d 1 (1st Cir. 1999) ........................................................................ 12

25

*McEuin v. Crown Equip. Corp.*,

26

328 F.3d 1028 (9th Cir. 2003) ........................................................................ 18

27

28

1
2

**TABLE OF AUTHORITIES**
(continued)

3

Page(s)

4
5

*McNulty v. Citadel Broad. Co.*,
    58 F. App'x 556 (3d Cir. 2003) .......................................................... 12

6
7

*Mitroff v. Xomox Corp.*,
    797 F.2d 271 (6th Cir. 1986) ............................................................. 13

8
9

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ...................................................... 13, 14

10

*SEC v. Perry*,
    No. 2:11-cv-1309-R (JCx) (C.D. Cal. July 9, 2012) ......................... 16

11
12
13

*SEC v. Retail Pro, Inc.*,
    Case No. 09cv1620-WQH-RBB, 2011 U.S. Dist. LEXIS 13095 (S.D.
    Cal. Feb. 10, 2011) ......................................................................... 8, 9

14
15
16

*In re STEC Inc. Sec. Litig.*,
    Case No. SACV 09-1304 JVS, 2011 U.S. Dist. LEXIS 75093 (C.D. Cal.
    June 17, 2011)................................................................................... 16

17

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .......................................................................... 12

18
19

*U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*,
    296 F. Supp. 2d 1322 (S.D. Ala. 2003) ............................................. 12

20
21

*United States v. Barile*,
    286 F.3d 749 (4th Cir. 2002) ............................................................. 11

22
23

*United States v. Beck*,
    418 F.3d 1008 (9th Cir. 2005) ............................................................. 8

24
25

*United States v. Bush*,
    58 F.3d 482 (9th Cir. 1995) ............................................................... 20

26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Ferguson,*
No. 3:06CR137, 2007 WL 4556625 (D. Conn. Dec. 20, 2007)......................... 16

*United States v. Garcia,*
413 F.3d 201 (2d Cir. 2005) ........................................................................ 15

*United States v. Hanna,*
293 F.3d 1080 (9th Cir. 2002) ....................................................................... 6

*United States v. Henderson,*
409 F.3d 1293 (11th Cir. 2005) ..................................................................... 9

*United States v. Hill,*
643 F.3d 807 (11th Cir. 2011) ..................................................................... 10

*United States v. Hitt,*
981 F.2d 422 (9th Cir. 1992) ......................................................................... 4

*United States v. Kingston,*
971 F.2d 481 (10th Cir. 1992) ..................................................................... 10

*United States v. Mason,*
993 F.2d 406 (4th Cir. 1993) ....................................................................... 10

*United States v. Matsumaru,*
244 F.3d 1092 (9th Cir. 2001) ..................................................................... 10

*United States v. Nacchio,*
No. 05-cr-005450EWN (D. Colo. Mar. 26, 2007) ................................... *passim*

*United States v. Olender,*
338 F.3d 629 (6th Cir. 2003) ......................................................................... 8

*United States v. Park,*
No. CR 08-00220 MMM, 2008 WL 2338298 (C.D. Cal. May 27, 2008) ......... 19

*United States v. Peoples,*
250 F.3d 630 (8th Cir. 2001) ......................................................................... 8

1

2

**TABLE OF AUTHORITIES**
(continued)

3

Page(s)

4

*United States v. Rea,*
   958 F.2d 1206 (2d Cir. 1992) .................................................................. 11

5

6

*United States v. Rigas,*
   2004 WL 360444 (S.D.N.Y. Feb. 26, 2004) ........................................... 16

7

8

*United States v. Santos,*
   201 F.3d 953 (7th Cir. 2000) ..................................................................... 8

9

10

*United States v. Skeet,*
   665 F.2d 983 (9th Cir. 1982) ..................................................................... 8

11

12

*United States v. Tomasetta,*
   2012 WL 1080293 (S.D.N.Y. Mar. 30, 2012) ....................................... 16

13

14

*United States v. Victor Teicher & Co.,*
   Case No. 88 CR. 796 (CSH), 1990 WL 29697 (S.D.N.Y. Mar. 9, 1990) ........... 6

15

16

*United States v. Whaley,*
   860 F. Supp. 2d 584 (E.D. Tenn. 2012) .................................................. 11

17

18

*United States v. Yazzie,*
   976 F.2d 1252 (9th Cir. 1992) ................................................................... 8

19

20

*Washington v. Dept. of Transp.,*
   8 F.3d 296 (5th Cir. 1993) ......................................................................... 9

21

22

*Wells Fargo Home Mortg. Overtime Pay Litig.,* No. MDL 06-1770 MHP,
   2007 U.S. Dist. LEXIS 77525 (N.D. Cal. Oct. 17, 2007) ..................... 19

23

*Wong v. Regents of Univ. of California,*
   410 F.3d 1052 (9th Cir. 2005) ................................................................. 17

24

25

*Yeti By Molly, Ltd. v. Deckers Outdoor Corp.,*
   259 F.3d 1101 (9th Cir. 2001) ................................................................. 17

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Other Authorities**

Fed. R. Civ. P.
  26 ...................................................................................................12. 15

Fed. R. Civ. P. (continued)
  26(a)(2)(A) ...........................................................................................14
  37(c) .....................................................................................................14

Fed. R. Crim. P. 16 ..................................................................................12

Fed. R. Evid.
  37(c)(1) ................................................................................................15
  403 ...............................................................................................15, 16
  701 ...............................................................................................*passim*
  701(a) ...................................................................................................10
  701(b) ...............................................................................................9, 11
  701(c) .........................................................................................8, 12, 15
  702 .............................................................................................4, 8, 12

3 *Federal Rules of Evidence Manual* § 701.02 (10th ed. 2013) ........................9, 12

4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §
  701.02 (2d ed. 1997) ..........................................................................12

# I.     INTRODUCTION

In his Motion *in Limine* to Exclude Lay Opinion Testimony Concerning Materiality of Alleged Omissions, defendant Manouch Moshayedi set forth the arguments for excluding the lay opinion testimony of ten witnesses—eight analysts who covered sTec, Inc. ("sTec") during the 2009-2010 period (the "Analysts"), and two investment bankers who worked on sTec's secondary offering (the "Underwriters").  As set forth in more detail in the Motion, the proposed testimony takes the form of hypothetical and speculative hindsight opinion about whether the Analysts and Underwriters would have considered allegedly omitted "facts" (which, themselves, are hotly disputed) to be "important" and how they may have reacted had they known the information at the time.  (SEC's Mot. *in Limine* to Admit Lay Op. Test. (Dkt. No. 257-2) ("SEC's MIL") at 1, 3-4; SEC's Opp'n to Def.'s Mot. *in Limine* No. 1 (Dkt. No. 283) ("Opp'n") at 1-2, 4-7.)  This testimony, however, is irrelevant, improper lay opinion and prejudicial, and should be excluded.

The SEC's Opposition is just an endless shell game in which the SEC constantly changes its arguments in a futile attempt to try to find one that may persuade the Court to allow the improper testimony of the Analysts and Underwriters.  For example, just during the briefing on the motions *in limine*, the SEC has changed its position regarding the Analyst testimony it intends to offer at trial.  In its own Motion *in Limine* to Admit Lay Opinion Testimony (Dkt. No. 257-2), the SEC proclaimed that "[t]he substance of the analysts' anticipated trial testimony is contained in their respective declarations submitted by the SEC in support of it [sic] motion for partial summary judgment."  (SEC's MIL at 2 n.1.)  Yet, after Mr. Moshayedi based his Motion *in Limine* on these declarations, the SEC now takes the exact opposite position and argues that "[Mr.] Moshayedi's reliance on the analysts' declarations as a blueprint of their expected testimony at

1    trial is misplaced" because those declarations do not contain their expected trial

2    testimony.  (Opp'n at 3-4.)

3        The SEC's next argument—raised for the first time in this case in its

4    Opposition—asserts that the Analysts and Underwriters should be able to testify as

5    fact witnesses because they supposedly are "victims" of the alleged fraud—an

6    argument that finds no support in fact or law.  (*See* Opp'n at 1-2.)  Indeed, the SEC

7    offers no evidence (and there is none) to support its bold allegation that either the

8    Analysts or the Underwriters are "victims."  And, if that argument fails, the SEC

9    argues that the Analysts and Underwriters should be able to testify as expert

10   witnesses because the SEC had previously identified them as *fact witnesses* in

11   supplemental disclosures and, therefore, Mr. Moshayedi should not be surprised by

12   the expert opinions they may offer at trial.  (Opp'n at 9-10.)  None of these

13   arguments has merit or supports the admissibility of the proposed Analyst or

14   Underwriter testimony.

15       The SEC also tries to disguise the purpose and extent of the proposed

16   testimony by claiming the witnesses will testify only as to the "importance" of the

17   information and not its "materiality."  (*See* SEC's MIL at 3, 5, 8 ("[The Analysts]

18   will only express their opinions as to whether the omitted information would have

19   been important to their coverage and understanding of [sTec] and how their

20   recommendations to client and investors would have changed had they known that

21   information at the time."), 8-9 ("Clearly, whether these people found the

22   information Moshayedi deliberately withheld to be important to their views about

23   sTec and Moshayedi's offering will be helpful to the jury in understanding what

24   was important information to an investor at the time."); *cf.* Opp'n at 1-2, 4-7.)  But

25   in this context, the term "importance" is just a synonym for "material."  The SEC's

26   intent is clear:  the Analysts and Underwriters are expected to tell the jury that the

27   allegedly omitted information was "important" (*i.e.*, material) information that

28   would have significantly altered the total mix of information.  (*Id.*)

1       These very issues were addressed and decided in *United States v. Nacchio*,

2 No. 05-cr-005450EWN (D. Colo. Mar. 26, 2007) ("*Nacchio*"), a case the SEC

3 heavily relied on to defeat summary judgment and which it claims is a "similar

4 case" that is "directly on point" with respect to the standard for determining

5 materiality in an insider trading case.[1]  (Pl.'s Opp'n to Def.'s Mot. for Summ. J.

6 (Dkt. No. 178) at 1, 4; Pl.'s Reply ISO Mot. for Summ. J. (Dkt. No. 201) at 16.)

7 With respect to an insider trading claim, *Nacchio* excluded analyst testimony on

8 issues relating to the "importance" of supposedly undisclosed information, finding

9 that analysts are not an appropriate proxy for the hypothetical reasonable investor

10 and that a professional analyst's opinion on the importance of certain information

11 is "irrelevant to whether that information would be important to a reasonable

12 investor in deciding whether to buy or sell stock."  *Nacchio* at 6.

13       The testimony of the Analysts and Underwriters should also be excluded

14 under Rules 701 and 403 of the Federal Rules of Evidence.[2]  The proffered

15 testimony fails each element of Rule 701 because (1) it is purely hypothetical and

16 speculative testimony that cannot satisfy the personal knowledge requirement; (2)

17 it (a) is irrelevant and cannot, therefore, be helpful to the jury's determination of a

18 fact in issue,  and (b) does not clarify an issue the jury could not otherwise

19 understand, but merely serves to tell the jury what it should find; and (3) relies on

20 technical and specialized knowledge within the scope of Rule 702.  *See* Fed. R.

21 Evid. 701(a)-(c).  The testimony should also be excluded under Rule 403 because,

22 as *Nacchio* held, lay opinion testimony of analysts regarding materiality is unfairly

23 prejudicial and likely to confuse the issues and mislead the jury.  *Nacchio* at 8-9

24

25

26 [1] For the convenience of the Court, a copy of *Nacchio* is attached to the Declaration of Thomas A. Zaccaro filed concurrently herewith.

27 [2] All references to "Rule" or "Rules" refer to the Federal Rules of Evidence unless otherwise noted.

28

1  (holding that "[t]he testimony would pose a significant danger of misleading the

2  jury" and "pose a danger of prejudice to Defendant" (internal citations omitted)).

3      *Nacchio* addresses the same facts and legal principles at issue in this case

4  and has been trumpeted by the SEC as persuasive authority that stands on all fours

5  with the instant case.  The SEC has relied extensively on *Nacchio*, using it both to

6  oppose Mr. Moshayedi's Motion for Summary Judgment and in support of its own

7  Motion for Summary Judgment, and cannot credibly disavow it now.

8      As the proposed evidence has little to no probative value and the risk of

9  unfair prejudice is clear, it should be precluded under Rule 403.  *United States v.*

10  *Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if

11  any) probative value, it's an abuse of discretion to admit it if there's even a modest

12  likelihood of unfair prejudice or a small risk of misleading the jury.").

13  **II.   DISCUSSION**

14      **A.   The Lay Opinion Testimony Should Be Excluded Because It Is**

15          **Irrelevant to the Jury's Determination of Materiality**

16      The lay opinion testimony of the Analysts and Underwriters should be

17  excluded because it is irrelevant to the jury's determination of materiality.  The

18  subjective hindsight opinion of a professional analyst or underwriter has no

19  relevance in determining materiality under the objective standard:  whether the

20  hypothetical reasonable investor would have considered the information material.

21      While the SEC denies that the Analysts and Underwriters will opine on

22  materiality or "utter the word 'material' to the jury," it concedes that it intends to

23  elicit lay opinion testimony from the Analysts and Underwriters to purportedly

24  help the jury determine whether the allegedly omitted information is material.  (*See*

25  Opp'n at 6-7 (arguing lay opinion testimony should be admitted to "help the jury

26  understand the importance of the undisclosed information").)  Specifically, the

27  SEC states that it expects the Analysts and Underwriters to opine on, *inter alia*,

28  issues such as (1) the importance or significance of the purportedly undisclosed

1   information to the Analysts and Underwriters' coverage and analysis of sTec;

2   (2) how their "coverage and analysis of sTec would have changed had they known

3   of the undisclosed information in [Mr.] Moshayedi's possession at the time he

4   traded"; (3) "the importance of STEC's forward-looking guidance to its stock

5   price"; (4) "the information they relied upon to create their own estimates of

6   STEC's future revenues, earnings per share, and target stock price"; (5) "their

7   understanding, based on STEC's public description of its $120 million supply

8   agreement with EMC, that this contract was for sales in the second half of 2009

9   and represented actual sell-through demand by EMC for that amount of product

10  during that period of time"; and (6) their "rel[iance] on that contract in modeling

11  STEC's future growth over 2009 and 2010." (*See, e.g.*, *id.* at 1-2, 4-7; SEC's MIL

12  at 3-5, 8-9.)  The SEC argues that the witnesses will not "be asked to testify

13  whether the undisclosed information would have been 'material' to a reasonable

14  investor, or opine on [Mr.] Moshayedi's knowledge or whether [Mr.] Moshayedi

15  was in possession of material, non-public information at the time he traded."

16  (Opp'n at 5.)

17      But, the proffered testimony is irrelevant to the issue of materiality or, to use

18  the SEC's terminology, the importance of the purportedly undisclosed information.

19  Indeed, the SEC's arguments were squarely addressed and rejected by *Nacchio*.  In

20  *Nacchio*, the Government sought to introduce lay opinion testimony from analysts

21  about what information they considered important about Qwest "to help the jury

22  determine what a reasonable investor would do." *Nacchio* at 2, 5.  The

23  Government argued (as the SEC does here) that the analysts would opine on the

24  importance of certain information to them, but would not opine on "such broad

25  matters of opinion as 'what is material in the marketplace' . . . ." *Nacchio* at 5-6.

26  The court rejected these arguments.  It held that a professional financial analyst is

27  not an appropriate proxy for a reasonable investor and that the subjective opinion

28  of a financial analyst is irrelevant to the determination of materiality.  *Nacchio* at 6

("[T]he information a financial analyst personally finds important is irrelevant to whether that information would be important to a reasonable investor in deciding whether to buy or sell stock. Common sense alone tells the court that a financial analyst is *not* akin to a reasonable investor.").

*Nacchio* cogently explained the basis for excluding the analyst testimony:

> [F]inancial analysts are arguably hypersensitive to information disseminated about the market. Undoubtedly, financial analysts encounter much information that they consider important but that a reasonable investor would not. In fact, it is precisely a financial analyst's job to consider information that a reasonable investor may overlook. In this case, using highly trained [analysts] to determine what a reasonable [investor would consider important would be] like using a bloodhound to determine whether the average person would pick up a scent.

*Nacchio Order*, *supra*, at 6-7 (internal citation and quotation marks omitted; alteration in original).

As in *Nacchio*, the testimony the SEC seeks to elicit from the Analysts and Underwriters in this case has no relevance to the determination of materiality. *See id.*; *accord United States v. Victor Teicher & Co.*, No. 88 CR. 796 (CSH), 1990 WL 29697, at *1 n.3 (S.D.N.Y. Mar. 9, 1990) (information that may be of interest to a professional securities trader because of professional interest in the stock market does not mean such information is material when judged through the eyes of a reasonable investor); *cf. United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (law enforcement officers not qualified to opine on whether a reasonable person would perceive a communication to be a threat on the President's life because of officers' extensive training, experience, and expertise). Accordingly, the proffered lay opinion testimony on the significance of the alleged disclosures should be excluded.

## B.  The Lay Opinion Testimony of the Analysts and Underwriters Should Be Excluded Under Rule 701

Lay witnesses are competent to testify about those facts about which they have personal knowledge because they personally perceived the information in real time.  A lay witness may also offer an opinion about what he or she perceived if it satisfies all three requirements of Rule 701.  The lay opinion testimony must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(a)-(c).  Here, the Analysts' and Underwriters' testimony fails all three requirements.

### 1.  The Proffered Lay Opinion Testimony Fails to Satisfy the Personal Knowledge Requirement of Rule 701(a)

The SEC does not (and cannot) deny that the Analysts and Underwriters have no first-hand knowledge of "concrete facts" that underlie their proffered lay opinions.  Instead, it argues that the questions it poses to these witnesses will not be in the form of hypotheticals because it will *create a foundation at trial* by asking the witnesses to "observe" (1) *emails introduced at trial* (that the witnesses did not send or receive) and (2) *prior sworn trial testimony* to establish the necessary foundation for their lay opinions as to the significance of the information in the emails and testimony.  (Opp'n at 4.)  But, introducing evidence at trial cannot create a foundation of personal knowledge for the lay testimony and does not transform these hypothetical questions into questions based on the Analysts' or Underwriters' first-hand knowledge of concrete facts.

Put simply, the SEC should not be permitted to manufacture a foundation where none exists.  Rule 701 clearly requires that lay witness opinion be based on

1   *first-hand* knowledge of concrete facts.[3]  *See, e.g., United States v. Yazzie*, 976

2   F.2d 1252, 1255 (9th Cir. 1992) ("[T]he witness may state his impressions and

3   opinions based upon what he observed" as a means of "conveying to the jury what

4   the witness has seen or heard." (quoting *United States v. Skeet*, 665 F.2d 983, 985

5   (9th Cir. 1982))); *United States v. Olender*, 338 F.3d 629, 637-38 (6th Cir. 2003)

6   (trial court properly excluded lay opinion testimony based on after-the-fact review

7   of documents and statements).[4]

8          The only authority the SEC can muster in support of its argument that it

9   should be permitted to *create a foundation* for lay opinion testimony at trial is *SEC*

10  *v. Retail Pro, Inc.*, No. 08cv1620-WQH-RBB, 2011 U.S. Dist. LEXIS 13095, at

11  *13 (S.D. Cal. Feb. 10, 2011).  *Retail Pro*, however, does not discuss the

12  foundational requirements for lay opinion testimony.  Instead, it stands for the

13  unremarkable proposition that expert testimony may be based on hypothetical facts

14  supported by evidence in the record.  *Id.* at *14-15.  In that case, the SEC moved *in*

15  *limine* for an order "excluding the testimony and expert report of [the defendant's]

16  expert, Jerry Arnold, because Arnold's testimony 'is solely based on assumptions

17  he was provided by Furman's counsel.'"  *Id.* at *11.  The court denied the SEC's

18

19

20  [3] "[P]rototypical example[s] of the type of evidence contemplated by the adoption of Rule 701 [relate] to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences."  Fed. R. Evid. 701, advisory committee's notes (2000) (internal citations omitted); *see also United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (Lay witnesses must base opinions on personal knowledge. They cannot offer opinion testimony that is not "tethered to perception, to what the witness saw or heard.").

21

22

23

24  [4] *See also United States v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) (lay witness testimony must be "based upon personal observation and recollection of *concrete facts*" (emphasis added) (internal quotation marks omitted)); *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (reversing lower court's decision to allow law enforcement agent to testify as lay opinion witness, because the agent lacked first-hand knowledge of the matters about which she testified and her opinions were based on an after-the-fact investigation).

25

26

27

28

motion to exclude evidence reasoning that "[e]xpert witnesses may be competent to give opinions based upon hypothetical facts *even though a foundation that the expert has personal knowledge of those facts has not been laid*." *Id.* at *14 (quoting *Estate of Carey by Carey v. Hy-Temp Mfg., Inc.*, 929 F.2d 1229, 1235 n.2 (9th Cir. 1991) (emphasis added)).  Thus, *Retail Pro* lends no support to the SEC's argument because it involves expert testimony and finds that *even absent a foundation of personal knowledge*, *an expert* may be qualified to testify.  *Id.*  This case is plainly inapposite and, in fact, supports Mr. Moshayedi's Motion.  (Opp'n at 4.)

The ability to answer hypothetical questions is "'[t]he essential difference' between expert and lay witnesses."  *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).  Although the SEC denies that it will ask the witnesses hypothetical questions, it proposes to introduce evidence at trial and ask a line of questions beginning, "What would you have done if you had known …"—this is, by definition, hypothetical questioning.  (*See* Opp'n at 1-2, *passim*.)  What a witness thinks he would have done in 2009 based on information shown to him in 2014 is not based on his perception in 2009—rather, it is the very kind of naked speculation barred by Rule 701.[5]  *See, e.g.,* 3 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 701.02[3] (10th ed. 2013) ("Nor is the Rule designed to permit completely hypothetical testimony."); *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (upholding the exclusion of testimony regarding what the witness would have done in the past if he had seen the relevant evidence (a warning label), where the testimony would not be based upon actual perception but upon "self-serving speculation"); *Athridge v. Aetna Cas. & Sur. Co.*, 474 F.

---

[5] The harm from allowing improper lay opinion testimony would be compounded here because the alleged material undisclosed information consists mostly of statements of belief and opinion (and negotiation posturing) that simply differed from those of Mr. Moshayedi.

Supp. 2d 102, 105 (D.D.C. 2007) ("Speculative testimony as to what a witness would have done under different circumstances cannot possibly be based on the witness's perception.").[6]

The cases cited by the SEC in support of its arguments are clearly distinguishable because, unlike this case, they do not involve multiple layers of inference and opinion, and they involve witnesses with first-hand knowledge of concrete facts whose opinions do not rely on technical expertise. *See United States v. Hill*, 643 F.3d 807, 841-42 (11th Cir. 2011) (finding no abuse of discretion where the lay opinion required no specialized knowledge, there was "little or no danger that lay witness testimony was used to evade the reliability requirements of Rule 702," and the "witnesses who had personally dealt with the fraudulent loan transactions at issue" were providing their opinions on whether the loans would have been denied if the borrowers had disclosed the source of their down payments); *United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir. 2001) (finding no abuse of discretion where INS officers who had previously reviewed visa petitions were permitted to testify about whether knowing certain facts would have influenced their decision to approve a visa petition); *United States v. Kingston*, 971 F.2d 481, 486-87 (10th Cir. 1992) (finding no abuse of discretion where witnesses charged with overseeing loans were permitted to testify about whether they would have provided the loan had they known borrower falsely stated that she did paid charges and fees with her own funds); *Einsberg v. Gagnon*, 766 F.2d 770, 781 (3d Cir. 1985) (finding witness who personally observed an offering

---

[6] *See also Hester v. BIC Corp.*, 225 F.3d 178, 184-85 (2d Cir. 2000) (holding that lay opinion witnesses may testify as to their own observations, but may not engage in mere speculation where the jury is in as good a position as the witness to draw an inference); *United States v. Mason*, 993 F.2d 406, 408-10 (4th Cir. 1993) (reversible error where district court allowed witness to give answers to prosecution questions that were based upon hypothetical facts).

1   memoranda and scrutinized it for adequacy of disclosure could testify as to how he

2   would have viewed undisclosed facts).[7]

3       In this case, the SEC plainly intends to elicit lay opinion testimony about

4   evidence introduced at trial that is far beyond anything the witnesses personally

5   observed.  This evidence should be excluded because it fails to satisfy the personal

6   knowledge requirement of Rule 701(a).

7       **2.     The Proffered Lay Opinion Testimony Fails to Satisfy the**

8       **Helpfulness Requirement Under Rule 701(b)**

9       Even if the proffered testimony could satisfy the personal knowledge

10   requirement, it should be excluded for the independent reason that it will not be

11   helpful to the jury's determination of a fact in issue.  Fed. R. Evid. 701(b); *United*

12   *States v. Rea*, 958 F.2d 1206, 1217 (2d Cir. 1992) (helpfulness is a threshold issue

13   "that must be determined by the court before it may allow the opinion to be heard

14   by the jury").

15       First, the lay opinion cannot meet the helpfulness requirement because, as

16   set forth above, it is irrelevant to the determination of materiality.  Materiality is

17   determined based on the objective standard of whether the "hypothetical

18   reasonable investor" would have viewed the allegedly omitted facts in light of "the

19   total mix of information made available" to the financial markets and having

20   "significantly altered the 'total mix' of information available."  *See Basic v.*

21   *Levinson*, 485 U.S. 224, 231-32 (1988)*; accord Grossman v. Novell, Inc.*, 120 F.3d

23   [7] *United States v. Whaley*, 860 F. Supp. 2d 584 , 595-96 (E.D. Tenn. 2012)

24   (allowing witnesses to testify regarding whether loan applications would have been approved if truth regarding misrepresentations was known because their opinions

25   did not require specialized knowledge and their opinions were based on their first-hand review of the loan applications at issue); *United States v. Barile*, 286 F.3d

26   749, 752, 754-56 (4th Cir. 2002) (analyzing the exclusion of a prior inconsistent statement, court found that prior statements of opinion by an FDA reviewer which

27   were contained in FDA documents created during her review were admissible to establish what she considered important at the time of her review).

1112, 1119 (10th Cir. 1997) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  The subjective opinion of a professional analyst or underwriter is irrelevant to the determination of what information a hypothetical reasonable investor would find to be material or important.  *Nacchio* at 6 ("Common sense alone tells the court that a financial analyst is not akin to a reasonable investor."); *see also McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 564 (3d Cir. 2003) (Rule 701 limits the admission of lay opinion testimony to that which will aid or clarify "an issue that the jury would not otherwise be as competent to understand" (quoting *Lauria v. Nat'l R.R. Passenger Corp.*, 145 F.3d 593, 600 (3d Cir. 1998))).

Second, and consistent with Rule 701(a), lay witness opinion is generally considered helpful only to the extent that it is necessary for a witness to use "shorthand" to summarize "facts that the witness observed."  4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 701.02 (2d ed. 1997); 3 *Federal Rules of Evidence Manual* § 701.02 (same).  Here, the proffered lay opinion testimony of the Analysts and Underwriters cannot satisfy the helpfulness requirement under Rule 701 because it is not based on any facts these witnesses personally perceived.  Instead, as set forth above, the testimony would be based on the lay witnesses' assessment of evidence presented at trial and the inferences and opinions they make based on that evidence.  (*See* Opp'n at 3-6.)  This is plainly improper.  *See Lynch v. City of Boston*, 180 F.3d 1, 17 (1st Cir. 1999) (lay opinion testimony must be excluded "when the jury can readily draw the necessary inferences and conclusions without the aid of the opinion." (citing 7 John Henry Wigmore, *Wigmore on Evidence* §§ 1917-18) (Chadbourne rev. 1978)); *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1333 (S.D. Ala. 2003) (lay opinion testimony inadmissible where "[a] jury can look at the same evidence considered by [the witness] and reach its own conclusions").

Finally, the proffered testimony would do nothing more than tell the jury what it should do—the very harm Rule 701(b) seeks to prevent. *Hester*, 225 F.3d at 181-82 (Rule 701(b) is "designed to provide assurances against the admission of opinions which would merely tell the jury what result to reach"). The SEC seeks to have Analysts and Underwriters with specialized knowledge and training opine on the importance of alleged "facts" which are in dispute (and about which they have absolutely no personal knowledge) and speculate as to what they would have done had they had personal knowledge of those "facts" back in 2009, all with the benefit of perfect hindsight.

The SEC should not be permitted to bolster its theory with such self-serving speculation. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059-60 (9th Cir. 2008) (district court did not abuse discretion in granting a motion to limit testimony because it "would have served to do nothing more than tell the jury what result it should reach" (internal quotation marks omitted)); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986) ("[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful . . . since the jury's opinion is as good as the witness's and the witness turns into little more than an 'oath helper.'"). Mr. Moshayedi is entitled to have the jury—not the SEC's pseudo-experts who were not disclosed, qualified, or subject to the vetting appropriate for an expert witness—determine whether the alleged omissions would have been important to a reasonable investor.

### 3.    The Proffered Lay Opinion Testimony Is Inadmissible Because It Is Based on the Witnesses' Expertise and Specialized Knowledge in Violation of Rule 701(c)

Even if the proffered testimony were relevant and could somehow satisfy the first two requirements of Rule 701, it should be precluded for the independent reason that it is based on "specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). The SEC should not be permitted to evade the expert

disclosure requirements set forth in Rule 26 of the Federal Rules of Civil Procedure, and its attendant protections, by calling an expert in lay clothing.  Fed. R. Evid. 701, advisory committee's notes (Rule 701 "channel[s] testimony that is actually expert testimony to Rule 702 . . . [to] ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson").

The SEC argues that the Analysts and Underwriters will not rely on their specialized or technical skill, but will "reach logical conclusions based upon facts they observed [at trial]."  (Opp'n at 8.)  But such evidence is improper—weighing the evidence and reaching "logical conclusions" is plainly the job of the jury.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."); *see also Hester*, 225 F.3d at 181-82 (Rule 701(b) provides "assurances against the admission of opinions which would merely tell the jury what result to reach." (emphasis and citation omitted)); *accord Nationwide Transp. Fin.*, 523 F.3d at 1059-60 (district court did not abuse discretion in granting motion to limit testimony because it "would have served to do nothing more than tell the jury what result it should reach" (internal quotation marks omitted)).  Moreover, as set forth above, these witnesses "observed" none of the purported facts and the reliability of purported "facts" is a key issue in this case.

Further, although the SEC appears to deny it now, in its Motion in Limine to Admit Lay Opinion Testimony, the SEC stated that "[t]he substance of the [A]nalysts' anticipated trial testimony is contained in their respective declarations submitted by the SEC in support of it [sic] motion for partial summary judgment." (*Compare* Mot. at 2 n.1, *with* Opp'n at 3-4.)  The declarations of the Analysts demonstrate their opinions are based on their specialized technical knowledge of sTec and in "analyzing and studying the semiconductor industry."  (*See, e.g.*, Decl.

of Thomas A. Zaccaro ISO MIL No. 1 ("Zaccaro Decl. ISO MIL No. 1"), Exs. A-H (declarations of Analysts attesting to the fact that their opinions are based on their experience studying and analyzing the semiconductor industry and their specialized skills in financial analysis).)  The Analysts are also expected to testify about how particular information would have affected their analytical models and employ such specialized concepts and analyses as "consensus revenue and earnings estimates," "guidance," "earnings per share," "target stock price," "modeling" of future growth, and "actual sell-through demand" in their analysis of the events that transpired at sTec.  (*See* Opp'n at 1-2, 4-7 (arguing that the Analysts and Underwriters should be permitted to testify about "how Mr. Moshayedi's misrepresentations and omissions, had they known them at the time, would have impacted their decision-making"); SEC's MIL at 1-5, 8-9 (arguing that analyst and underwriters should be permitted to testify about "how their understanding of STEC would have changed had they known those undisclosed facts at the time[,]" and "whether the omitted information would have been important to their coverage[.]"; *see also* Zaccaro Decl. ISO MIL No. 1, Exs. A (Cassidy Decl.) ¶¶ 7-9; B (Crawford Decl.) ¶¶ 7-9; SEC's MIL at 3-4.)  Understanding these specialty finance, investment, and semiconductor industry terms and concepts, however, is not "knowledge gained through normal experience" and cannot qualify as lay opinion.  *See Nacchio* at 6-8 (discussing how "highly trained" analysts differ from the prototypical reasonable investor and noting that where courts have allowed financial analysts to testify, "the financial analysts were qualified as experts and testified not based on their personal experience, but on their *expert opinion* as to what reasonable investors would have considered material" (emphasis in original)); Fed. R. Evid. 701, advisory committee's notes (2000); *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) ("[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life.").

The SEC's citations in support of its argument are unavailing as they limit analyst testimony to actual observations that do not rely on specialized knowledge or training.  In *Ferguson*, the SEC's primary authority, the court substantially restricted the analysts' ability to testify about the significance of information to their observations of particular investors.  2007 WL 4556625, at *3.  *Ferguson* allowed analyst testimony in the form of "observations" about investors, not hypotheticals, and the court encouraged the defendant to renew his objection under Rule 701(c) if the testimony strayed beyond the actual observations of the analysts.  *Id.* at *3 n.6.  *Tomasetta*, *Rigas* and *Perry* reached similar conclusions.  *See United States v. Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 1080293, at *4 (S.D.N.Y. Mar. 30, 2012) (limiting testimony to "what the analyst read, heard, asked about, and/or otherwise learned about [a company] from its disclosures"); *United States v. Rigas*, No. 02 CR. 1236 (LBS), 2004 WL 360444, at *1 (S.D.N.Y. Feb. 26, 2004) (permitting analysts to testify "as to interaction with a Defendant, the questions they asked, the reasons why they asked those questions and why they can recall the answers they received"); Order (Dkt. No. 119) at 1, *SEC v. Perry*, No. 2:11-cv-1309-R (JCx) (C.D. Cal. July 9, 2012) (Real, J.) ("analysts and investors may provide opinion testimony so long as the testimony is based upon personal observation and recollection of concrete facts").[8]

Apparently recognizing the expert nature of the proffered testimony, the SEC resorts to arguing that even if the witnesses are experts, they should not be excluded because Mr. Moshayedi should not be surprised that they are testifying because the SEC disclosed the Analysts during discovery and Mr. Moshayedi chose not to depose them.  (Opp'n at 9.)  But this is plainly improper.  Fed. R. Civ.

---

[8] The SEC's reliance on *In re STEC Inc. Sec. Litig.*, is equally unavailing.  No. SACV 09-1304 JVS (MLGx), 2011 U.S. Dist. LEXIS 75093, at *23-25, 45 (C.D. Cal. June 17, 2011) (Denying motion to dismiss and noting that third-party analyst statements "comport with Plaintiff's mosaic . . . .").

P. 26(a)(2)(A) ("[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702 . . . ."); *see also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1056 (9th Cir. 2005) (upholding district court's decision to exclude late designated expert witnesses when "[t]he need for those witnesses could reasonably have been anticipated prior to the supplemental identification of witnesses"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (upholding district court's decision to exclude the testimony of the defendant's only damages expert for failure to timely provide the expert report despite the previous disclosure of the expert's identity).

Indeed, ensuring compliance with the expert notice requirement motivated the enactment of Rule 701(c).  *See* Fed. R. Evid. 701, advisory committee's notes (litigants must not "evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson").  Further, Federal Rule of Evidence 37(c)(1) mandates the exclusion of expert evidence for the failure to make Rule 26(a) disclosures "unless such failure is harmless."  Discovery in this case is closed and trial is near.  Any attempt to now designate Analysts and Underwriters as experts would not be harmless.  The SEC has known about these witnesses since the inception of the case and there is no reason that they could not have complied with the disclosure requirements.  *See Lohnes v. Level 3 Commc'ns., Inc.*, 272 F.3d 49, 59-60 (1st Cir. 2001) (excluding expert evidence because party failed to make Rule 26(a) disclosures and deeming expert affidavit submitted shortly before final pretrial conference as "nothing short of a sneak attack").[9]

---

[9] As it stands, the SEC failed to provide the analyst declarations to Mr. Moshayedi until three weeks after the close of fact discovery.

1    Moreover, the rules for disclosing and qualifying experts also ensure the

2    reliability and relevance of their testimony, guaranteeing that they will employ "in

3    the courtroom the same level of intellectual rigor that characterizes the practice of

4    an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

5    137, 152 (1999).  Absent such qualifications (which are not present here), the

6    opinion testimony would usurp the role of the jury—exactly what the SEC

7    proposes to do here.  *See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592

8    (1993) (Unlike an "ordinary witness," an expert, because of his qualifications in

9    his field, is "permitted wide latitude to offer opinions, including those that are not

10   based on first hand knowledge or observation.").

11   **C.      The Proffered Testimony Should Be Excluded Under Rule 403**

12   Even if this Court finds that the proffered evidence is relevant and somehow

13   satisfies the requirements of Rule 701, it should still be excluded under Rule 403

14   because its meager probative value (if any) is substantially outweighed by the

15   danger of undue prejudice, confusion of the issues, misleading the jury, and

16   wasting time.

17   The SEC does not dispute that the lay opinion testimony poses "a significant

18   danger of misleading the jury into believing that it should judge materiality from

19   the perspective of a highly trained financial analyst [or underwriter] rather than

20   from the perspective of a reasonable investor." *Nacchio* at 8-9 (excluding lay

21   opinion testimony of analysts as unfairly prejudicial and likely to confuse and

22   mislead the jury); *see also McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1034

23   (9th Cir. 2003) (affirming exclusion of evidence where it "might . . . resemble in

24   the jury's mind something" which it was not); (*Compare* Mot. at 21-22, with

25   Opp'n at 10-12.  This "would pose a danger of prejudice to [Mr. Moshayedi]

26   because the jurors may erroneously conclude that they were not the best qualified

27   to assess the materiality of the information at issue, that they should second guess

28   their own judgment, and that they should defer to the [Analysts or Underwriters]."

1   *Nacchio* at 8-9 (internal citations, quotation marks, and brackets omitted);

2   (*Compare* Mot. at 21-22, *with* Opp'n at 10-12).

3          The SEC also does not dispute the risk that significant confusion may be

4   caused and significant time wasted, through sidebars and other disputes, as

5   Mr. Moshayedi would be forced to, among other things, (1) repeatedly assert

6   objections to the foundation for the testimony; (2) engage in lengthy cross-

7   examination by presenting facts (also not known to the witnesses) to test their

8   opinions and establish their bias; and (3) present numerous witnesses in rebuttal.

9   *See United States v. Park*, No. CR 08-00220 MMM, 2008 WL 2338298, at *7

10  (C.D. Cal. May 27, 2008) (exclusion under Rule 403 is proper when "the court

11  [may have] . . . to conduct a mini-trial" to establish the basis for the evidence or

12  "give limiting instructions that might lead to jury questions or confusion");

13  (*Compare* Mot. at 21-22, *with* Opp'n at 10-12).

14         Instead, the SEC argues that Mr. Moshayedi's concerns about witness bias

15  are unfounded because the SEC never threatened or coerced the witnesses.  (Opp'n

16  at 10-12.)  But Mr. Moshayedi never suggested that the SEC threatened the

17  Analysts or Underwriters with civil (or criminal) charges or any other type of

18  harm.  (Mot., *passim*.)  The bias in this case arises from the fact that the witnesses

19  are employed by entities with strong motivations (and likely institutional policies)

20  to promote cooperation with the SEC, and not with Mr. Moshayedi.  *See*

21  Christopher B. Mueller & Laird C. Kirkpatrick, 3 Federal Evidence § 6:79 (3d ed.

22  2012) ("Mere vulnerability to charges *of any kind* (whether or not related to the

23  present case) may put a witness under the thumb of the government[.]" (emphasis

24  in original)); *Wells Fargo Home Mortg. Overtime Pay Litig.*, No. MDL 06-1770

25  MHP, 2007 U.S. Dist. LEXIS 77525, at *14-15 (N.D. Cal. Oct. 17, 2007) (holding

26  that declarations of current employees who may fear for their jobs are "inherently

27  suspect"), *rev'd on other grounds, Mevorah v. Wells Fargo Home Mortg.*, 571

28  F.3d 953, 959 (9th Cir. 2009).

1      Finally, the SEC now appears to want to use the Analyst and Underwriter

2 testimony to argue that the witnesses are victims of the alleged fraud.  (*See* Opp'n

3 at 1-2 ("Moshayedi asks the court to exclude these witnesses' lay opinion

4 testimony, even though they are among the percipient fact witnesses to, and

5 victims of, Moshayedi's fraudulent misrepresentations and omissions."); SEC's

6 MIL at 1-2 (the SEC seeks to "hav[e] the [A]nalysts and [U]nderwriters testify

7 about the fraud Moshayedi perpetrated on them").)  Nowhere has the SEC actually

8 alleged, nor does the record support, this contention.

9      Where, as here, "testimony not only lacks probative value but actually leads

10 the jury to draw false inferences about the accused, only a slight showing of

11 prejudice need be made to tip the scales toward exclusion."  *United States v. Bush*,

12 58 F.3d 482, 489 (9th Cir. 1995).  That showing has been made and this improper

13 lay opinion evidence should be excluded.

14 **III.    CONCLUSION**

15      For the foregoing reasons, Mr. Moshayedi respectfully requests that the

16 Court bar the SEC from offering, eliciting, or referencing at trial lay opinion

17 testimony from the Analysts and Underwriters.

18

19  Dated:  October 7, 2013        Respectfully submitted,

20             LATHAM & WATKINS LLP

21             By /s/ Patrick E. Gibbs

22                Patrick E. Gibbs

23             PAUL HASTINGS LLP

24             By /s/ Thomas A. Zaccaro

25                Thomas A. Zaccaro

26             Attorneys for Manouch Moshayedi

27

28

CASE NO. 12-CV-01179-JVS (ANx)
DEFENDANT'S REPLY MEMORANDUM ISO
MOTION *IN LIMINE* NO. 1